When you're ready. Yes, I'd like to reserve five minutes for the panel. May it please the Court, Counsel. My name is Rae Miyamaro. I'm here on behalf of Plaintiff Appellant Bliesner. And Mr. and Mrs. Bliesner are here today in the courtroom. I'd like to recite a brief recitation of the facts, because I think they're really important in this case, and that's why we asked for a oral argument in this case. It's very fact-intensive and is very important to our argument that summary judgment should not have been granted. And briefly, Ms. Bliesner was employed by Verizon for 25 years at the time of the layoff at issue. When she was laid off, she was within a few years of retirement benefits. During the course of those 25 years, she held nine or more different positions, encompassing 28 or more specific defined duties in addition to broad job descriptions, had had 15 or more formal trainings, and, of course, 25 years of on-the-job training. She had previously been laid off several times and had successfully bumped back into a position. She had been a dues-paying union member until she was laid off the last time and had previously filed several grievances which were resolved to her satisfaction in a proper manner and in a timely manner or within 12 months. This time, however, the results were dramatically different on both sides. When Ms. Bliesner was laid off this time, the company, Verizon, refused to reinstate her. They basically determined that she couldn't bump this position because she didn't meet the qualifications for bumping contained in the collective bargaining agreement, and we'll go through those in a minute. At that point, she became a non-dues-paying member because she continued to be laid off from the company. And this concerned Ms. Bliesner because she noticed a distinct difference in the representation  and the very different experience than before was very lengthy and delayed. There was a lack of communication, in her opinion, a lack of effort. And she attributed that difference to the fact that she was no longer paying dues. Yes, she did, and she attributed it to that fact based on a couple of different issues. One is a comment by a union official or a local officer in which she stated that the union, while the union had to represent non-dues-paying members, didn't have to represent them as eminently as dues-paying members. And in addition, a general perception of the membership to that effect, which was testified to by two different opponents, not including Kathy Bliesner. And that comment was made when? That was prior to Ms. Bliesner's layoff. Prior to several years prior, right? Yes. And more than one person heard that comment, and more than one person testified to that comment. In the end, Ms. Bliesner lost the grievance at arbitration based on latches, and she lost all rights to her retirement benefits. Regarding the breach of the collective bargaining agreement, the court determined that there were no facts, material questions of fact, to substantiate that argument and dismissed it on summary judgment. The court ignored innumerable questions of material fact regarding that issue. First of all, the collective bargaining agreement itself and the language contained therein, which proffers that the company shall, and later on will, provide these time frames in which Ms. Bliesner should have been given an opportunity to attempt to meet the requirements within the time frames. She never was given that opportunity. It was arbitrarily decided that she didn't possess that ability. Now, let me make sure I got your detail in terms of what you think the time frame was that the collective bargaining agreement required to be given to Ms. Bliesner. Sure. And that was one week of training and four weeks on-the-job training, effectively. But one week of training. Of formal training where you weren't in the job setting receiving on-the-job training, formal training, and four weeks on-the-job training. The court ignored the ambiguity in the language in which questions arose. What did the word shall and will require? Did it require that she be given the opportunity first? Because the effect, if she didn't succeed, would be that she would be permanently laid off. Did it allow Mrs. Sully to determine that she didn't meet the qualifications and therefore never be given the opportunity? Ambiguity concerning what is a job duty, a job versus a job classification. What about the intent of the parties? We have case law out there that states that collective bargaining agreements are to be considered differently than regular contracts because they deal with the collective bargaining agreement tries to put in concise terms a method to deal with a myriad of issues, many more than just two parties and one goal. In addition, everything in a collective bargaining agreement goes back to the intent of a collective bargaining agreement. That's why case law allows parole evidence to show that intent. The court didn't look, the district court didn't look at that intent here. And there was plenty of evidence about the intent and past interpretation and past enforcement on this particular section, including the negotiation records. We had statements from Verizon's own agent regarding the fact that reclassifications were never meant to prevent bumps such as the one Ms. Gleason was trying to engage in. This was a hotly disputed issue. For a long time, we had many, many grievances provided by both sides discussing this particular issue. In particular, the issue of when was it allowable under the collective bargaining agreement for the company to combine job duties, effectively having two different jobs with the same title with two different sets of job duties and effectively prohibiting Ms. Gleason from bumping. That's an issue here because Ms. Gleason was already in the position of analytical assistant, I believe it was titled, the same position she was attempting to bump in. The difference was her old job description was more of a broad, encompassing job description that stated, for instance, it would include some clerical duties and research and data entry. And it was very, very broad and not specific in terms of each particular duty or each particular piece of software she would use. The job description that was given at the time she attempted to bump was very specific. It talked about mark and soda and T-mail and all these specific single duties that she would engage in. If you were to look at both job descriptions, effectively all the duties in her new job description would fall within her old job description because the old job description was much broader. And there's a question of whether or not they were reclassifying two different sets of job duties into one in an effort to avoid Ms. Gleason's bump. Ignored a history of very broad interpretation of this section of the CBA and very little strict adherence in terms of employees who were able to bump because it was determined that two different sets of job duties had been combined into a single classification, and employees who were bumped even though they didn't have the skill set that was already determined in the beginning, and employees who were given more than the one week and the four weeks to obtain those job skills. And that would be Sherrick, McElroy, Clear P, and Ann K. There were questions about whether or not Ms. Gleason had the ability to get up to speed in the time frame and who had the right to make that determination and on what basis. Here we had Ms. Gleason who had 25 years with the company, as I stated, nine different jobs, 28 different job duties, 15 different formal training, 25 years of on-the-job training. Certainly she was more competent than Ms. Foley to determine what skills and abilities she had in terms of catching up and getting up to speed within the week or the four weeks. Ms. Foley herself only had two years with the company. Further, what constituted substantial under that particular portion of the CBA it talks about if an employee has a substantial portion or percentage of those job duties, then they can attempt to go ahead and try that one week and that four week. What constituted substantial? How many job duties did Ms. Gleason have or not have? By my count, she had more job duties than she didn't have. Let me ask you this. Assume, and I understand that you've got an argument that this is not how the collective bargaining agreement should be construed, but assume that under the collective bargaining agreement, any employee who's attempting to bump has to be able to accomplish the formal training within one week. And assume further, and I understand you're contesting this as well, that the job into which she is attempting to bump is appropriately classified and that the skills required for that job are skills that she needs to be trained in within one week. We have a fair amount of evidence that she could not receive the formal training within the one week period. We have contrary evidence from the plaintiff that says in a general sort of way, I could have done it within a week. The district judge says, but that's just too general and conclusory, and that's not enough to raise an issue of material fact. How do you respond to the district judge's conclusion on that point? Because we had more than just a conclusory statement saying that I could have done it. We had a past history established at that position of Ms. Gleason in fact doing just that. She had previously bumped into positions where she had never been formally trained in certain duties and was able to successfully pick those up. Very quickly, because what she did effectively is give herself formal training outside of her job duties. She had other employees come in and help her to learn it quickly, and therefore she'd accomplish that. And in fact, her employer evaluations note that they talk about how they were very happy that she was able to take on a new position, never be formally trained, and yet immediately be able to accomplish the tasks and duties that she'd been assigned. Again, because she took it upon herself, A, to go out and get that training elsewhere, still within the company but outside of work duties, but B, just because she'd been with the company so long and she was so competent and so familiar with all of the different duties that it was very easy for her to pick those up. Because a lot of them were intermingled during the course of her employment there. Moving on to the breach of the union's duty, what we have is evidence that obviously it wasn't processed timely. Further, we have evidence that the union didn't even argue the latches issue at the arbitration. But lack of being timely is not itself evidence of bad faith, is it? No, but it is when that results in basically the misdemeanors claim being dismissed with no analysis. The result was that it was a dismissal. Not only because it was too late, but being too late is not bad faith. Well, if you look at it in the sense that it was a five-year period and then there was no argument made to protect what the union's attorney had already been warned would be pursued at the arbitration and, in fact, was mentioned at the arbitration, we do have an arbitrary and capricious representation, an unfair representation. You add that to the fact that there was this lack of communication testified to by Ms. Gleasner, a lack of investigation testified to Ms. Gleasner, proven by the union continually to present wrong facts, who she worked for, how long she'd been employed, so on and so forth. We have a union attorney who was notified in 1998 that latches was an issue. Years later at arbitration, notified during arbitration hearings that latches was an issue. There was a complete failure to argue that, which resulted in Ms. Gleasner losing any right to make any argument. So that's your evidence of bad faith? Yes. Well, in addition to the claim that the reason that occurred, the reason that there was a lack of investigation. Before you get there or go further along that line, I have a question going back to the breach of the agreement itself. You know, most of these cases, the matter doesn't go to arbitration. In fact, you know, that's one of the complaints is that the union never carried it to arbitration. But here, there was an arbitration. And as you say, the arbitrator decided that the union didn't proceed in a timely manner and so dismissed the arbitration. So in a sense, the employee had her chance on the merits of this claim to arbitration. Now, doesn't that arbitration foreclose, again, attacking, mounting the same attack that the employer violated the agreement? No, because what, first and foremost, Ms. Gleasner had to appeal multiple times for several years to get the union to take action. And again, we blame that on discrimination because she was no longer a dues-paid member. However, at the arbitration, the decision was not made based on the merits of the case and whether or not the collective bargaining agreement was breached. It was made on latches. That was the end. That was the end of the issue. I know that, but that was the proceeding by which the employee and the union had the right to raise the issue. And as you say, it wasn't raised, it wasn't reached because of the latches, but that doesn't mean the union or the employee shouldn't be foreclosed from arguing that same claim again. Just as in a lawsuit, you know, if your lawsuit is dismissed for not complying with the statute of limitations, that doesn't mean you can file another lawsuit. Correct. That's why we're here. Why should you be able to, you know, file this claim again that the employer breached the collective bargaining agreement when you lost it once? Because we didn't lose it at the arbitration because it was dismissed on the basis of latches. That's what I say. So if you get a suit dismissed because, say, statute of limitations and you never reached the merits, it doesn't mean you can file the lawsuit again. Well, under a Section 301 hybrid claim, it means you can come to this court if the union is determined to have unfairly breached the duty of representation. Even though the matter actually went to arbitration? Yes, because, again, we didn't discuss the merits. Can you cite a case where it actually went to arbitration and relief was still granted in the 301? I will do that in rebuttal, Your Honor. All right. We allege that it was an error for the court to consider Gleasner's claims against the company before considering them against the union. Number one, case law states that it should be reversed. Number two, Kathy Gleasner was a subject of prejudice because of that. Because what happened is the court simply considered the claims against the company, never considered the claims against the union. But she has to win on both. Certainly, certainly. And so the reason the order matters is because the court missed a whole section of argument in which argument about the company's breach is intertwined with the argument about the union's breach. Because, obviously, right there we're dealing with five years of administrative litigation over that very issue. So, effectively, a whole half of the evidence at issue wasn't even considered. Now, how do you know that wasn't considered? Meaning, as I read the district court's order, the district court says, as I look at the collective bargaining agreement and as I look at the bumping rights, I simply don't find material issue a fact that would support her going to trial as to whether or not there was a breach. And because she loses on this issue, I don't need to reach the other issue in the sense of deciding it. But I'm not at all sure that the district judge didn't consider all the relevant evidence as to the first question. What basis do you have to say that the district judge missed relevant evidence because of the order in which he proceeded? Because, effectively, when he made the decision, the collective bargaining agreement wasn't breached. We hadn't met that burden. We don't know how much further he went in terms of analyzing regarding the breach of the fair duty of representation. We don't have that in the brief. We don't know. If he didn't, my client's been prejudiced because it could have swayed the judge's opinion because he hadn't had all the facts. And furthermore, he could have missed evidence that would have, in fact, supported our argument against the company. But you can take care of that, I think, simply by pointing out to us the evidence that he missed or mis-evaluated in terms of making his decision about the breach of contract. Yes, we can. Which, of course, you're allowed to do and you're seeking to do right now. Certainly. Yeah. And then we have, obviously, supports that say that these are completely independent claims that can stand alone. Now, I acknowledge that we could sue one or the other without bringing in both of them as defendants. We still have to prove the elements on both defendants to get where we need to go. There are cases that say you don't have to do that in situations where what you're dealing with in terms of a breach of fair duty of representation doesn't have anything to do with the company's violation of the collective bargaining agreement. For instance, if it's an error made during negotiations. Our rationale is that based on that idea, that this case could fall within that with an extension of the law because Mrs. Wiesner was damaged by what the union failed to do. Even if we never reached the point of suing the company or winning against the company and getting those damages, which would be her lost benefits, retirement benefits, she was damaged by having to administratively litigate this for five years and spend time and money to end up in a position where she never got to argue the merits because the union acted arbitrarily, capriciously, and discriminatorily and made serious error that fell outside of the range of reasonableness. So she was damaged by that. Nevertheless, we argue that the summary judgment against the company never should have been granted and both of these matters should have gone to trial to be decided by a trial juror. Why don't we do this? You had 20 minutes. We've got about a minute and 45. Let's listen to the other side. We have your argument pretty well in hand, and then you can use that remaining time for rebuttal. Thank you. Good morning. May it please the Court. Tim O'Connell from the Stoll-Reeves Law Firm on behalf of the defendant employer, in this case Verizon Northwest, Inc. With me at council table is Mr. Richard Rosenblatt, counsel for the Communication Workers of America International Union. Are you going to split the argument? We are, Your Honor. I will take no more than 10 minutes to address the claims pertaining to Verizon. We thought that was the logical order because, of course, Judge Lodge granted his decision on that basis. I would like to address two matters to you this morning. First are evidentiary kinds of questions and then a few issues on the merits. On the evidentiary matters, I want to go exactly, Judge Fletcher, to your question to counsel about Judge Lodge's ruling exercising his discretion to strike certain portions of Ms. Wiesner's affidavit. We contend that that was not just correct but probably the correct response. The plaintiff wants to rely on her 25 years of experience and having gone through bumping several times to express an opinion about how quickly she could learn something that, and this is absolutely undisputed, she had never been working with at all. And that just misses the boat. There's no foundation for her to express this opinion about her ability to learn something that she's never touched before. This is not a case where she's being asked to express an opinion about the pumping process itself that she had gone through. I tend to disagree with you on that one. You may disbelieve someone, but I think somebody is probably in the best position of anybody to say, I'm a quick learner or I'm a dummy. And she's saying I'm a quick learner. I think that's the quintessential personal knowledge. She may be wrong, but I'm not sure you can strike it. Well, two problems with that. I mean, clearly we don't permit lay witnesses to express an opinion as to their medical condition. I mean, it's one thing for a lay witness to say my stomach hurts. It's another thing for a lay witness to say I have stomach cancer. So just because the person is acquainted with their own inner workings does not mean necessarily that they can express any opinion they want. Secondly, these are things with which she has no familiarity. And the fact that after 25 years of experience, she has learned French and Italian does not mean that in one week she can learn Russian and Arabic and Chinese. That's what we're talking about. Luckily, Russian, Arabic, and Chinese are not at issue in this case. Thankfully. Thankfully. But what is at issue are complex computer programs that the undisputed evidence in the record before you requires for the one program at all, the MARC, M-A-R-C program, three weeks of formal classroom training. For one of the other programs that Planoff admitted no familiarity with, one full day of formal training. For another one of the programs that Planoff admitted no familiarity with whatsoever, that is the HORIZON program, the employee information form, the information is weeks. What's the harm of not striking those materials? Well. What's the big deal? The harm of not striking them is that you have these conclusory, wholly speculative statements in the record. I think, frankly, you would be in a position to deflate them. That's on the ground that it's an opinion. It's nice for her to have that opinion, but there's no ground to credit her. Fair comment, Your Honor. I mean, the undisputed evidence is that these things take weeks to learn. And for her to exercise the opinion that I could learn them in a week is nothing other than that. It is her conclusory opinion. It is her conclusory opinion about something that she admittedly does not know anything about, and that is these particular programs. She may know quite a bit about GT or HORIZON, but she doesn't know anything about these programs at all. If there's no other questions on that, I do want to mention one other evidentiary matter. You just heard several things that simply are not in the record at all. Counsel's claiming that Ms. Bleasner has, in the past, learned these programs within a week. There's no evidence of that in the record. She had exercised bumps, but that record does not demonstrate her facility in learning new programs in the space of a week. The other comment that Jeannie Sully is somehow incapable of evaluating Ms. Bleasner's performance because she's only been with the company for two years, that's simply not in the record at all. Counsel has cited that in her briefing. If you actually look at the reference for that record, she cites to a page in Judge Lodge's decision which does not talk about Ms. Sully's qualifications at all. There's just no reference for it in the record. I do want to talk briefly about the question of breach. You know, I noticed an oral argument. For the first time, counsel has advanced an argument about what the ambiguity of this contract is that we have not seen in the briefing before. And that is some notion that there is an ambiguity in 14.5.2 of the collective bargaining agreement between its first sentence and its last sentence. First time we've heard this argument. And it's wrong. 14.5.2, frankly, it is difficult for me to contemplate how you would draft more clear language. Bumping is an inherently disruptive process. And these parties put some guidelines on when employees are going to be prepared and allowed to permit bumping. And that is, if you look at the first part of 14.5.2, employees who have previously held the job to perform all or a substantial portion of the duties required by the position will be provided with refresher training. Now, I've heard a couple of times people lapse into formal training. That is not the language of the contract. It is refresher training. Refresher, by its terms, means something you've done already. You can't have refresher training on something for which you need initial training. The language down below, about four weeks, is after the fact. That is, after someone has been permitted to bump. If, within four weeks, they don't demonstrate proficiency, they are laid off and they have no further bumping rights. So it is confusing apples and oranges to talk about the process at the beginning of the bumping process when you are permitted to look at the initial training versus refresher training. And the contract is very clear, refresher training. And then the process at the end by which you evaluate the employee's performance. It's the first time we've heard this argument, and it is wrong. Planus wants to talk about the intent about combining classifications. And I submit that has it backwards, of course. We don't talk about intent until you find ambiguity in the contract. And there is no ambiguity in this contract. You know, the evidence before you is that these parties negotiated hard to, for the first time, incorporate in this contract language that had been taken from another GTE, collective bargaining agreement, the one with the IBEW. That language was very clear, had been explained to the parties at bargaining, and had been the subject of several arbitrations explaining its meaning. To suggest, therefore, that there is ambiguity, the language speaks for itself in that regard. And you don't, therefore, get to offer intent language when there is no ambiguity. And in any event, when we actually look at what this purported intent was, it's not at issue in this case. When we look at what Ms. Bleasner testified her understanding of the intent is, it's at page 1644 of the record, paragraph 5 of her revised affidavit. It's not the company's intention to combine job classifications to prevent bumps. The undisputed evidence in the record before you is that the classification, the job at issue, had certain tasks assigned to it because of the business reasons for this remote location. In Moscow, Idaho, we needed people who could do a variety of things. That's in the Sully Declaration, paragraph 8, page 715 in the record. And there, Ms. Sully points to the fact that, indeed, well before Ms. Bleasner had ever submitted her bump, an inventory had been prepared about this target job, and all of these tasks had been identified as integral components of these jobs. Let me sidetrack you for just a moment, if I might. It's stated at various places that Ms. Bleasner was within a fairly short time of retirement because she'd had a substantial period of employment with this company already. And the fact that she's been laid off and, as it turns out, was not allowed to bump, meant that she couldn't retire on that schedule. Does that mean she gets no pension whatsoever? I'm not quite sure what that means. Not at all, Your Honor. I mean, her pension rights are protected under ERISA. She had been with the company for far longer than necessary for minimum vesting. She was a vested participant in the pension program. You know, I appreciate that because she was laid off shortly before her anticipated retirement, that changes her plans. But she clearly still has vested benefits under GTE slash ERISA's pension plan, and there isn't really an ERISA claim having been brought here. I understand that. Right. So, I mean, no, she still has pension benefits. They are, by virtue of having lost the last few years of her employment at GTE, I will concede freely, they might have been lessened because, of course, the length of your service impacts the amount of your pension. But she still clearly is entitled to a pension benefit. It's just a question of how much. With that, I will reserve the rest of my time for Mr. Rosenblatt to deal with the DFR questions. Good morning, Your Honor, Your Honors. Richard Rosenblatt on behalf of the Communication Workers of America. I am going to focus here on the fair representation portion of the claim. As has been pointed out already, in this case, there are two elements to succeed against either party, and that's proving the breach of contract and the breach of the duty of fair representation. And District Court Judge Lodge found that since there was no breach of contract, she didn't meet one of the two elements and, therefore, didn't have to reach the second element. What is there to argue on the fair representation? There was no finding made on it, right? I'm sorry, I didn't hear. There was no finding made on it, you say, by Judge Lodge. He never reached the issue. He never reached the issue because he didn't have to reach the issue. So what is there to argue? Their argument, their basic argument, and this will also go to a question that you raised earlier, the basic argument of the plaintiffs was that the union's actions were motivated by discrimination, specifically that she had not been the union, she was not a union member at the time. And they rely, to make that argument, they rely on the evidence of a statement made by a Darlene Ferens, who was a local officer, 15 years ago. You asked when that statement was made. Fifteen years earlier, where she said that we don't fight as hard for nonmembers as we do for members. It's that stray remark that they rely on to make this argument that the international, not the local, the international, the only union defendant in this case, was motivated by discrimination. That argument fails for a variety of reasons, all based on undisputed facts. First of all, as I said, there is no evidence. Can I interrupt? Just a minute. I think the thrust of Judge Tashima's question was, well, if the district judge didn't rule on the question, and if we reverse on the question on which the district judge did rule, that is to say on the contract breach, why don't we just send it back to the district judge? Why are we being asked to rule on that now ourselves? Oh, I apologize. I might have misunderstood his question, but that's now my question if it was not his. Okay. The answer to that is that, as I understand the court's authority, that it has the right to uphold or to deny the appeal on any of the grounds, not only the one decided by the judge, and this is a reason that it could decide it. And I apologize if I didn't answer that earlier. I misunderstood it. Do you think on the basis of this record we can find that the union was acting with great zeal and they haven't complained? Well, I don't know if you can find great zeal, but that's not the standard, so I don't think that's the standard you have to find that they were acting with great zeal. Any zeal? A little bit of zeal? Oh, I think there was good faith in this case. This goes to a question that Judge Tashima asked. The mere fact of something found to be untimely does not prove breach of the duty of fair representation. In this case, after the international union representative made the determination, after reviewing the bargaining history, the training records, talking to witnesses that he could not prevail, she went to an internal union appeals process, and the union at its national convention decided to pursue this case. Now, if they didn't have any zeal, they would not have ever gone to the step of going to arbitration. So I do think that there was zeal. Were they the most active and vibrant zeal I've ever seen in a union grievance? I wouldn't suggest that it was, Your Honor, but that's not the standard here. Well, but the standard that you must meet in trying to persuade us that you're entitled to summary judgment is that the facts are so clear that there is no way a reasonable jury presented with this evidence could decide that you did not comply with your duty. You slipped and said, well, that doesn't prove that we didn't fulfill our duty. Well, but that's not the question in front of us. You've got to prove that you did on the current record. And I believe on the current record we do prove that. And I briefed it, and I will quickly go through what the evidence is. First of all, she argues that discrimination because she was a nonmember. The only evidence she has to support that is this stray remark made 15 years earlier by a local person. There's no evidence that the international people involved in this case ever made similar remarks and, more importantly, even knew her membership status at any time. And interestingly, the person who made this remark 15 years earlier, Darlene Farrans, was the same person who processed her grievance through the three steps. And in her deposition, Ms. Bleasner testified, she fought for me in the grievance process. So that's the person who allegedly was not acting with, who had made the remark that we wouldn't act with the same zeal. There is no evidence on the record at all to show that these, the two international people involved in this case, were in any way discriminatory, acting on discriminatory, with discriminatory motive in making any of the decisions. And you can't rely on a stray remark of a local officer 15 years earlier to implicate an international union because there's no evidence that the union instigated or encouraged it. Interestingly, she goes through the internal union appeals procedure, which is for members. She does that after the local, the international rep, rather, drops the, decides not to pursue the grievance. She goes through the internal union appeals procedure for members. If they were discriminating against her because she wasn't a member, they wouldn't have let her use the appeals procedure, which she was successful in, in getting this thing reversed and taken to arbitration. Mr. Rosenblatt, I'm going to ask the same question again that I asked before, and I think Judge Fletcher asked you, and that's this question. One, it seems to me, if we decide that the, that the district court did not err in concluding that there was no breach of the collective bargaining agreement, then it seems to me we can affirm. That's correct. Because for the plaintiffs to win, you've got to win both sides of the argument, right? On the other hand, if we decide that the district court did err and should not have granted summary judgment on the breach of the collective bargaining agreement, then I think we have to reverse, because I guess the question is, is the record sufficient for us in the first instance, right, to reach your question? I don't think it is. So I don't understand the relevance of your argument about whether or not, you know, you breached your duty of fair representation or not. That's not a question I don't think we can decide on this record and on this appeal, is it? Well, I mean, I think, to be quite frank, you understand your authority better than I understand your authority. But as I understand it, is if the judge decides on one element of a case, and you find that the judge was correct on a different element, that the record doesn't support proving a different element of the case, then you can dismiss on that basis. This record here, at least in my brief, not through the plaintiff's brief, but in my brief, and the appendix has all of the undisputed evidence that supports a finding that there wasn't a breach of the duty of fair representation. I mean, that's my understanding. I mean, maybe, you know, I don't. I understand that if you find that. If he finds in a scenario in which we could conclude that the district court was wrong with respect to the employer, that indeed the employer was in breach, but that this record shows no flaw with respect to the union's operation, therefore we should affirm. You could find that. That's a possibility you're suggesting, isn't it? That's correct. You could affirm on the basis that there was no breach of the duty of fair representation. That's right, because they're inextricably linked, so it's either element. That's correct. You could find that the judge was wrong on the contract breach, but in any event, since there was no breach of the duty of fair representation, we'll affirm as to the dismissal of the claim. If there are no more questions. I just wanted to correct one other thing that was said as a claimant to the record, and that is the claim that the union attorney was notified in 1998 that they were going to raise the Latches defense. The record is undisputed that the union attorney was not notified until four days before the arbitration hearing of the Latches defense, and, in fact, the union rep at three different times during the processing of the grievance and attempts to settle the grievance spoke to the company, their company counterpart, and they never raised timeliness. Timeliness was never raised at all until just days before the hearing. Okay. Thank you. Thank you. Ms. Amaro, you've got a little time for rebuttal. Another error that Ms. Gleasner is proposing is that the court erred in striking Ms. Gleasner's affidavit number one and not designating which portions of the affidavit were stricken so that, effectively, we today don't know which portions the court relied on or didn't rely on. Further, IRA 701 allows lay opinions based on personal perception, if they're helpful to the prior to understand or the facts and can be expressed in opinion. Of course, Ms. Gleasner could talk about her experience and her ability to learn new tasks quickly and easily, particularly at a place of employment where she'd been employed for so long and had so many varied duties and jobs. What the court then did was didn't strike any portion of defendant's affidavits, despite the fact that they effectively were just as what the court deemed self-serving as plaintiff-Gleasners. The court viewed matters in a light most favorable to the non-moving party. The court made inferences in favor of the non-moving party. The court weighed evidence, judged credibility, and tried facts. The court used terms such as reaching a level, self-serving, unpersuasive credibility. Those are terms the court shouldn't be using. That supports our argument that the court was weighing evidence becoming the prior effect that's not allowed. Summary judgment was granted inappropriately in this case and must be sent back for review by the jury. To answer the question earlier about what do we have to allege that we didn't ever reach the arbitration level to pursue an unfair representation claim, no, we absolutely do not. Over and over again, case law says what we have to prove, for instance, in the Womble v. Local case is we can establish that they processed it in a perfunctory fashion. We can show that the union's breach undermined the grievance process and, therefore, contributed to the error in the decision regarding the collective bargaining agreement breach. That's Mullahill v. Top Flight. And in Rasek v. Communications, an unexplained union action or unexplained union inaction can be enough. So whether or not they finally chose to arbitrate it after Kathy Blesner had to push it through many years of appeal doesn't matter. We can still reach an unfair representation claim based on whether or not they fell outside the range of reasonableness, and we certainly believe that we did, and we also believe that it was discriminatory. Okay. Any questions? I think not. Thank both sides for their useful argument.
judges: Tashima, W. Fletcher,, Pollak